IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **NYCOLE L. S.,**[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 20-1272-JWL |
| **KILOLO KIJAKAZI,**[2] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) consideration of Plaintiff's vision (or blepharospasm) or of her migraine headaches, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I.     Background**

Plaintiff protectively filed applications for DIB and SSI benefits on July 6, 2018. (R. 10). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred at step two or thereafter when applying the sequential evaluation process in considering her "involuntary eye closures and resulting diminished vision" and in considering her migraine headaches. (Pl. Br. 1, 11-20).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the

Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed earlier. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the errors alleged in the order presented in Plaintiff's Social Security Brief.

## II.    Plaintiff's Allegations of Low Vision or Blepharospasm and Vision Loss

Plaintiff argues, "Though the ALJ found [Plaintiff]'s tardive dyskinesia to be a severe impairment at step two, the ALJ did not discuss [her] blepharospasm at step two or when assessing the RFC nor did the ALJ account for decreased vision in the RFC assessment." (Pl. Br. 11). Plaintiff acknowledges the ALJ recognized her allegations of low vision, and determined it was not a medically determinable impairment (MDI) because the record evidence does not "demonstrate the existence of this condition." Id. at 11-12 (quoting R. 14). She also recognized the ALJ both found she had tardive

4

dyskinesia (hereinafter TD) as one of her severe impairments (Pl. Br. 11) (citing R. 13) and acknowledged the evidence included "an examination finding involuntary orbicularis and facial spasms when evaluating low vision at step two," but argues the ALJ erred in failing to find blepharospasm as a severe, medically determinable impairment in this case. Id. at 12-13 (citing R. 13). She argues the ALJ did not, and could not, consider any limitations resulting from her blepharospasm when assessing RFC because limitations allegedly arising from impairments which are not medically determinable are precluded from consideration in an RFC assessment. Id. at 14 (citing Ireland v. Colvin, No. 14-1012-JWL, 2014 WL 7185008, at *8 (D. Kan. Dec. 16, 2014)).

Plaintiff argues the ALJ could not have considered blepharospasm as part of her TD because her ophthalmologist diagnosed both TD and blepharospasm as separate impairments, and even if blepharospasm were considered as part of the TD, "there is no indication in the remainder of the ALJ decision that the ALJ considered [Plaintiff]'s vision problems when assessing her limitations." Id. She argues the ALJ attributed her left arm issues but not her vision problems to TD. Id. at 15-16. She argues the opinions of the state agency psychological consultants and of the state agency medical consultants[3] (which the ALJ found persuasive) failed to address:

> blepharospasms or involuntary severe facial spasms as a separate
> impairment or part of tardive dyskinesia. Rather, the non-examining
> consultants found no medically determinable impairment for low vision or

---

[3] The opinions expressed by state agency medical and psychological consultants during the consideration and reconsideration levels of agency review are properly called "prior administrative medical findings." 20 C.F.R. § 416.913(a)(4) (2019). But they are considered pursuant to the same standards as medical opinions, id. § 416.920c, and for simplicity the court hereinafter also refers to them as medical opinions.

5

> being legal blind [sic] and considered [Plaintiff]'s tardive dyskinesia in relation to her upper and lower extremities, not her face.

(Pl. Br. 16). Plaintiff argues the ALJ failed to consider her "involuntary eye closures and resulting low vision," id., and she was harmed thereby because the record evidence demonstrates limitations caused by this condition. Id. at 16-17.

The Commissioner argues the ALJ correctly found the blindness or low vision alleged by Plaintiff is not an MDI in the circumstances present in this case. (Comm'r Br. 7) (citing R. 13). She points out the ALJ noted the record evidence regarding Plaintiff's vision, including an examination which "found involuntary orbicularis and facial spasms" but normal vision, and "reasonably concluded that, taken together, this evidence did not demonstrate the existence of a medically determinable visual impairment." Id. at 7-8 (citing R. 13, 14). She argues this conclusion is also consistent with the medical opinions of the state agency medical consultants and with the medical evidence. Id. at 8-9. She argues that even if Plaintiff's blepharospasm is individually a severe impairment, the failure to so find is harmless because the ALJ considered and "explicitly discussed Plaintiff's involuntary blinking within her analysis of the evidence relevant to Plaintiff's RFC." Id. at 9 (citing R. 17).

Later in her Brief, the Commissioner argues that the ALJ appropriately discounted the severity of Plaintiff's allegations of symptoms. Id. at 13-16. Regarding Plaintiff's allegations of eye or vision symptoms specifically, the Commissioner points out the ALJ found her TD responded well to medication and found her allegations "inconsistent with her report to medical providers that she had no problems with her vision." Id. at 15

6

(citing R. 13, 18, 389, 395, 495, 509, 527, 556, 728).  The Commissioner also points to the ALJ's consideration of evidence of Plaintiff exaggerating her TD symptoms, noting her citation to a November 2018 examination where Plaintiff had "a spasmodic hyperextension of the left arm when someone was present in the room, but 'no episodes when no one is looking.'"  (Comm'r Br. 16) (quoting R. 18-19) (emphasis in brief).

In her Reply Brief Plaintiff reiterates her earlier arguments and claims the Commissioner's arguments miss the mark because Plaintiff's "diminished ability to see was not the result of a disorder of the eye, but because of involuntary eye closures."  (Reply 2).  She argues the ALJ did not address blepharospasm as a symptom of TD but, "the only discussion regarding [Plaintiff]'s difficulty with vision centered on evidence that her eyes were structurally healthy," and when discussing TD "the ALJ did not address [Plaintiff]'s involuntary eye closures, but focused on [her] pain and muscle spasms in her left arm."  Id. at 2-3.

### A.     The ALJ's Relevant Findings

The ALJ found Plaintiff has severe impairments including TD.  (R. 13).  She found that Plaintiff experiences migraine headaches which are not severe within the meaning of the Act.  Id.  The ALJ also found that Plaintiff's "reported legal blindness or low vision, is not a medically determinable impairment, due to a lack of objective evidence."  (R. 13) (citing Ex. 8E at 5, 8 (R. 322, 325)).  She explained the evidence relied upon in reaching this finding:  Plaintiff reported she was not blind on her work history form, Plaintiff stated at a clinic visit in 2018 that she was not blind and had no vision problems, and an ophthalmology exam in June 2019 revealed involuntary

7

orbicularis and facial spasms with normal vision, while at an April 2019 exam she "reported that she was wearing her glasses full-time, and seeing well with her current glasses at distance and near. Id. at 13-14 (citing Exs. 4E/3, 13F/4-5, 22F/5, 9, 10 (R. 285, 647-48, 846, 850, 851). The ALJ concluded:

> Thus, because there is no evidence in the record, including documented physical symptoms, functional limitations, diagnostic findings or techniques, which would demonstrate the existence of this condition, the undersigned finds that this condition is not medically determinable. A medically determinable impairment may not be established solely on the basis of a claimant's allegations regarding symptoms (20 CFR 416.908, and 416.929). There must be evidence from an "acceptable medical source" in order to establish the existence of a medically determinable impairment that can reasonably be expected to produce the symptoms (20 CFR 416.913(a)).

(R. 14).

The ALJ discounted Plaintiff's allegations of symptoms because they are not consistent with the medical evidence and the other record evidence. Id. at 17. She began summarizing the treatment records and found the "treatment records do not support the limitations alleged at hearing." Id. She noted Plaintiff's report in February 2016 of "abnormal muscle movements, a hand tremor, and eye blinking," and that the involuntary movements were improved in April 2016. Id. She noted that in April 2018, about a month after Plaintiff's release from the hospital after a suicide attempt, Plaintiff "indicated that [she] was still working, was doing better since being released, and that she was taking her prescribed medications." (R. 17).

The ALJ discussed Plaintiff's treatment for TD.

> In addition to her mental impairments, the claimant has received treatment for tardive dyskinesia with complaints of pain and muscle spasms in her left arm (Exhibits 2F at 57; 3F at 12 [(R. 509, 528)]). During her October 2017

> clinic visit, the claimant reported that she had been experiencing left arm pain with tingling, and involuntary movements that was previously resolved with Ingrezza, and being partially relieved with Flexeril (Exhibit 2F at 54 [(R. 506)]). The claimant denied having any vision or balance problems, headaches, weakness, or problems with coordination or her gait.

Id. at 18. The ALJ noted that in April and July 2018 Plaintiff "reported that her tardive dyskinesia was "<u>responding well to Ingrezza</u>," with a "<u>significant reduction in the severity of her TD symptoms</u>." Id. (quoting R. 537, 556) (emphases in ALJ's decision). The ALJ noted that in a November 2018 visit establishing primary care treatment at Health Professionals of Winfield, the provider noted "a spasmodic hyperextension of the left arm when someone was present in the room, but '<u>no episodes when no one is looking</u>.'" Id. at 18-19 (quoting R. 688) (emphasis in ALJ's decision). The ALJ noted the results of a neurologic exam in April 2019 was "<u>mild tardive dyskinesia</u>" in Plaintiff's upper extremities. Id. at 19 (quoting R. 840) (emphasis in ALJ's decision).

> The ALJ found the opinion of Plaintiff's APRN, Ms. Schneider not persuasive
>
> because it is inconsistent with the claimant's own reports that she is able to maintain her levels of daily living, that she has been able to work full-time at substantial gainful levels, and her denials of difficulty ambulating, or weakness … [and] the issue of disability is reserved to the Commissioner.

Id. She specifically explained that, as a mental therapist, Ms. Schneider's opinion that Plaintiff's TD "is debilitating, and an irreversible side effect of her anti-psychotic treatment, resulting in extreme limits and barriers to the claimant's day-to-day living, her quality of life, and her ability to gain employment," "has been offered outside her actual area of expertise." (R. 19).

> The ALJ explained her reasons for finding Dr. Matias's opinion is not persuasive:

> [I]t appears that the doctor relied quite heavily on the subjective report of symptoms and limitations provided by the claimant at the request of her disability lawyer, and the doctor seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. Moreover, this opinion is inconsistent with the claimant's actual physical exam, performed on March 21, 2019, which revealed stable vital signs, an ambulatory patient requiring no assistance, a quick steady gait, no distress, good pulses, no edema, and only <u>blinking eyes and a spasmodic hyper-extension of the left arm</u>.

(R. 20) (citations omitted) (emphasis added).

The ALJ found the opinions of the state agency medical and psychological consultants persuasive, but tempered the medical consultants' opinions "to the claimant's benefit, by limiting her standing/walking to only 2 hours out of an 8-hour workday, secondary to the claimant's representatives supplied RFC." Id. at 21.

### B.   Analysis

The ALJ applied the correct legal standards in evaluating Plaintiff's allegations of low vision, visibility, blindness, TD, blepharospasm, blinking, involuntary eye closures, orbicularis, or whatever other term may be or has been used to describe Plaintiff's alleged eye/vision impairment and the functional limitations caused thereby, and the record evidence supports her findings. The ALJ is neither constrained by nor forced to use the terminology used by Plaintiff or her counsel to describe her impairments. Rather, the determination at step two is based on medical factors alone; Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); and on the evidence of an impairment and how severe it was during the time Plaintiff alleges she was disabled. 20 C.F.R. §§ 404.1512, 416.912.

The ALJ properly considered whether Plaintiff had blindness or low vision and determined it was not an MDI applicable to Plaintiff in the circumstances of this case. (R.13-14). As the ALJ noted, in her Adult Function Report Plaintiff suggested she was blind. At one point she stated her condition limited her ability to work because she "[c]annot see" and stumbles and falls "due to visibility." (R. 322). She stated she cannot drive because she is "unable to see," and that she "[h]as to feel change to tell the coin." (R. 325). The evidence cited by the ALJ in her determination that Plaintiff is not blind and does not have low vision is supported by the record and Plaintiff does not argue otherwise. She argues rather, that the ALJ erred by failing to consider her blepharospasm and determine it is a severe impairment in the circumstances. Contrary to Plaintiff's argument, the ALJ clearly considered and discussed her blepharospasm. (R. 13, 17, 20) (noting "involuntary orbicularis and facial spasms," "eye blinking," and "blinking eyes," respectively). The fact the ALJ did not mention the word "blepharospasm" or discuss this evidence in greater detail is of no significance. The requirement to consider all the evidence is not a requirement to discuss all the evidence or to use particular terms in the discussion provided. "Rather, in addition to discussing the evidence supporting h[er] decision, the ALJ also must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996) (citing Zblewski v. Schweiker, 732 F.2d 75, 79 (7th Cir. 1984) ("a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position"). The discussion provided here, in context, is sufficient to make any subsequent

11

reviewer aware of the basis for the ALJ's decision. More is not required. Huskey v. Astrue, No. 06-4065-JAR, 2007 WL 2042504, at *9 (D. Kan. July 5, 2007) ("The court [in Clifton] explained that the Commissioner is required to discuss the evidence and explain his step three finding sufficiently for a subsequent reviewer to determine whether the Commissioner applied the correct legal standard and whether substantial evidence supports the factual findings.") (citing Clifton, 79 F. 3d at 1009).

Plaintiff suggests that the RFC assessment made by the ALJ does not include, and is prohibited from including, limitations attributable to blepharospasm because the ALJ allegedly found Plaintiff's blepharospasm was not an MDI since she "did not address [Plaintiff]'s blepharospasms as a medically determinable impairment." (Pl. Br. 12) (emphasis added). This is mere conjecture, apparently based upon the ALJ's finding low vision or blindness were not MDIs and her citation to Dr. Amstulz's ophthalmological examination (which found involuntary orbicularis and facial spasms) in support of that finding. Plaintiff's conjecture ignores that involuntary orbicularis and facial spasms, blinking eyes, and eye blinking—blepharospasm—are also symptoms which may be associated with TD and that the ALJ found TD is an MDI in this case. Benign Essential Blepharospasm Research Foundation, What Is Blepharospasm? ("Blepharo means 'eyelid'. Spasm means 'uncontrolled muscle contraction'. The term blepharospasm [blef-a-ro-spaz-m] can be applied to any abnormal blinking or eyelid tic or twitch resulting from any cause, ranging from dry eyes to Tourette's syndrome to tardive dyskinesia."), available online at, http://mail.blepharospasm.org/blepharospasm-what.html (last visited September 2, 2021).

Plaintiff seeks to avoid this result by arguing that Dr. Amstultz, after his ophthalmologic examination of Plaintiff, diagnosed both blepharospasm and TD. While this is accurate (R. 848), it does not change the facts blepharospasm can be a symptom of TD and the ALJ found Plaintiff has TD as a severe impairment. Further, although Dr. Matias diagnosed Plaintiff with TD, noting she is "not able to see clearly due to involuntary eye closing" and while "walking independently" her eyes were "closing sporadically," id. at 660, and Dr. Matias opined limitations resulting therefrom which are disabling, id. at 661-62, the ALJ found this opinion, dated March 21, 2019, is inconsistent with Dr. Matias's examination on the same day showing "stable vital signs, an ambulatory patient requiring no assistance, a quick steady gait, no distress, good pulses, no edema, and only blinking eyes and a spasmodic hyper-extension of the left arm." (R. 20) (citing R. 676). The ALJ's finding is supported by the record evidence cited, and uses the language used in Dr. Matias's treatment note. (R. 676) ("Vital Signs … are stable … ambulatory w/o assist, … Quick steady gait, … no distress, left arm would go into spasmodic hyperextension and eyes blinking, … no edema, good pulses." Clearly, the ALJ considered Plaintiff's blepharospasm as a symptom of her TD. Plaintiff's argument the state agency consultants did not consider blepharospasm or facial spasms as a separate impairment or as a part of her TD is negatived by this same argument. As healthcare providers expert in the evaluation of disabilities, the state agency consultants are aware that blepharospasm is a symptom of TD, and their evaluation of Plaintiff's TD necessarily included consideration of her blepharospasm.

13

Plaintiff's argument that she was harmed because the ALJ did not include RFC limitations due to "involuntary eye closures and resulting low vision" which she alleges are shown by the record evidence also fails. (Pl. Br. 16-17). The evidence cited by Plaintiff in support of the assertion of functional limitations are allegations of symptoms reported directly in Plaintiff's testimony or functional reports, or they are her reports to healthcare providers recorded in the treatment notes. Id. However, the ALJ discounted Plaintiff's allegations of symptoms because they are inconsistent with the record evidence and, in fact, she noted one provider's report that Plaintiff demonstrated the symptom of spasmodic left arm hyperextension when the provider was present but not when no one was looking. (R. 18-19). The record evidence supports the ALJ's findings regarding Plaintiff's allegations of symptoms and Plaintiff has made no serious showing otherwise. As noted above, Plaintiff must show the record evidence compels a finding contrary to that of the ALJ; Elias-Zacarias, 502 U.S. at 481, n.1; and she has not done so here.

### III.    Migraine Headaches

Plaintiff claims the ALJ erred (in acknowledging Plaintiff's migraine headaches are medically determinable but then determining they are not a severe impairment) because she did not consider migraines at step three or when assessing Plaintiff's RFC. (Pl. Br. 18-19) (citing Hennigh v. Colvin, No. 15-2684-JWL, 2016 WL 1298074, at *5 (D. Kan. March 31, 2016)). She argues the only reference to MDI after step two in the ALJ's decision was "boilerplate language that in considering [Plaintiff]'s symptoms, the ALJ considered the underlying medically determinable impairments," and "the ALJ

14

failed to say anything about considering [Plaintiff]'s migraine headaches or the limitations resulting from them when assessing the RFC." (Pl. Br. 19). Plaintiff concludes, "Even accepting the improvement upon which the ALJ [based] her step two finding, the record establishes that [Plaintiff] continued to experience migraines that should have been considered when formulating [her] RFC." Id. at 20.

The Commissioner argues the ALJ's finding Plaintiff's migraine headaches were not severe within the meaning of the Act was reasonable and was supported by the record evidence. (Comm'r Br. 10-12). She argues the ALJ properly found Plaintiff's allegations of symptoms were inconsistent with the record evidence. Id. at 13-18.

Once again, Plaintiff's argument fails because she does not point to record evidence which compels finding greater functional limitations resulting from her migraine headaches than those assessed by the ALJ. As Plaintiff acknowledges, the ALJ found "simply no support in the record for the frequent, debilitating, headaches alleged by the claimant." (R. 13). Plaintiff points to evidence suggesting she gets headaches when stressed, when her hormones are changing, and if her bipolar sets up; that she takes Botox injections which have significantly reduced the frequency of her headaches to two a month but she has breakthrough headaches which she treats with Imitrex, Excedrin, and lying down, and that she has more headaches when stressed. (Pl. Br. 19-20).

There are two problems with Plaintiff's argument. First, once again all the evidence cited relates to Plaintiff's subjective allegations of symptoms which, as noted above, the ALJ properly discounted. More importantly, the evidence cited does not allege specific functional limitations resulting from her migraine headaches and certainly

15

does not compel finding greater limitations than those assessed by the ALJ. While the ALJ might have viewed the evidence as more limiting than she did, she was not required to do so and when the evidence will support two views of the evidence, one of which is the view taken by the ALJ, the court may not impose its judgment over that of the Commissioner. Lax, 489 F.3d at 1084.

This court's decision in Hennigh does not require a different result. As Plaintiff acknowledges, the ALJ here stated she had carefully considered the evidence including all Plaintiff's MDIs in determining Plaintiff's allegations of symptoms are not consistent with the evidence. (Pl. Br. 19) (citing R. 16-17). Moreover, the ALJ stated she had assessed the RFC after careful consideration of the entire record. (R. 15). As the court stated in Hennigh, "the court's general practice is to take the ALJ at h[er] word when [s]he says [s]he has considered a matter." 2016 WL 1298074, *5 (citing Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007)). In Hennigh, this court noted that the ALJ's "decision leaves the court with the distinct impression that the ALJ did not consider Plaintiff's migraines or her carpal tunnel syndrome when he assessed RFC." Id. Here, the court is not left with the same impression and finds no reason to depart from its general practice to take the ALJ at her word when she said she considered all the evidence, which includes evidence of migraine headaches, when assessing RFC. Flaherty, 515 F.3d at 1071 (citing Hackett, 395 F.3d at 1173).

Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

16

Dated September 3, 2021, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**
